UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | : | |
|---|---|---|
| RYAN O'DELL, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:23-cv-948 |
| | : | |
| v. | : | |
| | : | **COMPLAINT FOR VIOLATIONS OF** |
| CONCERT PHARMACEUTICALS, INC., | : | **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| RICHARD H. ALDRICH, THOMAS G. | : | **THE SECURITIES EXCHANGE ACT** |
| AUCHINCLOSS JR., JESPER HØILAND, | : | **OF 1934** |
| PETER BARTON HUTT, WILFRED E. | : | |
| JAEGER M.D., ROGER D. TUNG PH.D., and | : | **JURY TRIAL DEMANDED** |
| CHRISTINE VAN HEEK, | : | |
| | : | |
| Defendants. | : | |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Concert Pharmaceuticals, Inc. ("Concert or the "Company") and the members Concert board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Concert by affiliates of Sun Pharmaceuticals Industries Ltd., an entity incorporated under the laws of India ("Sun Pharma").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on February 2, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Foliage Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Sun Pharma, will merge with and into Concert, with Concert continuing as the surviving corporation and as a wholly owned subsidiary of Sun Pharma (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated January 19, 2023 (the "Merger Agreement"), each Concert common share issued and outstanding will be converted into the right to receive: (i) $8.00 per share owned; plus (ii) one non-tradable contingent value right ("CVR") representing the contractual right to receive contingent payments of up to $3.50 per CVR in accordance with the terms and subject to the CVR Agreement (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Concert's outstanding common stock and will expire on March 3, 2023 (the "Tender Offer").

3. Defendants have now asked Concert's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Concert's financial projections relied upon by the Company's financial advisor, MTS Securities, LLC ("MTS"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by MTS. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Concert stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Concert's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Concert common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Richard H. Aldrich is a co-founder of Concert and has served as a member of the Board as Chairman since May 2006.

11. Individual Defendant Thomas G. Auchincloss Jr. has served as a member of the Board since December 2014.

12. Individual Defendant Jesper Høiland has served as a member of the Board since April 2019.

13. Individual Defendant Peter Barton Hutt has served as a member of the Board since December 2006.

14. Individual Defendant Wilfred E. Jaeger M.D. has served as a member of the Board since May 2006.

15. Individual Defendant Roger D. Tung Ph.D. is Concert's scientific founder and has served as a member of the Board since April 2006 and is the Company's President and Chief Executive Officer.

16. Individual Defendant Christine van Heek has served as a member of the Board since April 2016.

17. Defendant Concert is incorporated in Delaware and maintains its principal offices at 65 Hayden Avenue, Suite 3000N, Lexington, Massachusetts 02421. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "CNCE."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

20. Concert operates as a clinical stage biopharmaceutical company that develops novel small molecule drugs for the treatment of autoimmune diseases. The Company's lead product

candidate is CTP-543, which is in Phase III clinical trial for the treatment of alopecia areata, a serious autoimmune dermatological condition. It has strategic collaborations with Avanir Pharmaceuticals, Inc.; Jazz Pharmaceuticals, Inc.; Cipla Technologies; and Processa Pharmaceuticals. The Company was incorporated in 2006 and is headquartered in Lexington, Massachusetts.

21. On January 19, 2023, Sun Pharma and the Company jointly announced the Proposed Transaction:

> MUMBAI & LEXINGTON, Mass.--(BUSINESS WIRE)--Jan. 19, 2023-- Sun Pharmaceutical Industries Limited (Reuters: SUN.BO, Bloomberg: SUNP IN, NSE: SUNPHARMA, BSE: 524715 (together with its subsidiaries and/or associated companies, "Sun Pharma")) and Concert Pharmaceuticals, Inc. (NASDAQ: CNCE) ("Concert") today announced that they have executed a definitive agreement under which Sun Pharma will acquire all outstanding shares of Concert through a tender offer for an upfront payment of $8.00 per share of common stock in cash, or $576 million in equity value. Concert stockholders will also receive a non-tradeable contingent value right (CVR) entitling holders to receive up to an additional $3.50 per share of common stock in cash, payable upon deuruxolitinib achieving certain net sales milestones within specified periods, subject to the terms and conditions contained in a contingent value rights agreement detailing the terms of the CVRs. The transaction was approved by the Boards of Directors of both companies.
>
> The upfront payment of $8.00 per share of common stock in cash represents a premium of approximately 33% to Concert's 30-day volume weighted average price as of January 18, 2023, the last trading day prior to today's announcement.
>
> Concert is a late-stage biotechnology company pioneering the use of deuterium in medicinal chemistry. Concert has an extensive patent portfolio, including its lead product candidate deuruxolitinib – an oral inhibitor of Janus kinases JAK1 and JAK2 for the treatment of Alopecia Areata, an autoimmune dermatological disease – which is in late-stage development. Concert has completed the evaluation of the efficacy and safety of deuruxolitinib in adult patients with moderate to severe Alopecia Areata in its THRIVE-AA Phase 3

clinical program and two open label, long-term extension studies are ongoing in North America and Europe. Sun Pharma's immediate focus would be to follow Concert's plan to submit a New Drug Application (NDA) to the U.S. Food and Drug Administration (FDA) in the first half of 2023.

Alopecia Areata is an autoimmune disease in which the immune system attacks hair follicles, resulting in partial or complete loss of hair on the scalp and body. Alopecia Areata may affect up to 2.5% of the United States and global population during their lifetime[1,2,3]. The scalp is the most commonly affected area, but any hair-bearing site can be affected alone or together with the scalp. Onset of the disease can occur throughout life and affects both women and men. Alopecia Areata can be associated with serious psychological consequences, including anxiety and depression. There are currently limited treatment options available for Alopecia Areata.

"Sun Pharma is building a global Dermatology and Ophthalmology franchise and aims to be a preferred development and commercial partner in these therapies worldwide. The acquisition of Concert adds a late-stage, potential best-in-class treatment for Alopecia Areata in deuruxolitinib," said Abhay Gandhi, CEO North America, Sun Pharma. "There is a significant unmet need in the Alopecia Areata space and we aim to build on Concert's commitment to supporting the Alopecia Areata patient community. We are well-positioned to successfully bring this product to market globally. I look forward to welcoming the exceptionally talented Concert team who have worked tirelessly to develop the product to bring it to market."

"We are pleased to enter into this exciting transaction with Sun Pharma, which delivers substantial value to our shareholders and is the outcome of a thorough review process overseen by the Concert Board," stated Roger Tung, Ph.D., President and CEO of Concert. "Our mission at Concert has always been to translate innovative science to clinical solutions in order to meaningfully improve patients' lives. We are proud to see our team's accomplishment – creating a valuable new drug candidate for a major, underserved disease – appropriately recognized and valued by Sun Pharma as a means to expand their ongoing, international commitment to dermatology. I am confident that this transaction will maximize value for our shareholders and enhance access to deuruxolitinib for patients with Alopecia Areata."

**Transaction Terms and Timeline to Closing**

Under the terms of the merger agreement, Sun Pharma will promptly commence a tender offer to acquire all outstanding shares of Concert common stock. Concert stockholders will be offered an upfront payment of $8.00 per share of common stock in cash. Concert's Board of Directors unanimously recommends that Concert stockholders tender their shares in the tender offer.

Concert stockholders will also receive a non-tradeable CVR, which entitles Concert stockholders to receive up to an additional $3.50 per share of common stock in cash, payable upon deuruxolitinib achieving certain net sales milestones within specified periods, subject to the terms and conditions contained in the contingent value rights agreement detailing the terms of the CVRs. These milestones, subject to terms and conditions as specified in the contingent value rights agreement, include: (i) $1.00 per share of common stock, payable the first time that in any fiscal year between the time of the first commercial sale of deuruxolitinib in the U.S. and March 31, 2027, net sales of deuruxolitinib is equal to or exceeds $100 million, and (ii) an additional $2.50 per share of common stock, payable the first time that in any period of four consecutive fiscal quarters between the time of the first commercial sale of deuruxolitinib in the U.S. and December 31, 2029, net sales of deuruxolitinib is equal to or exceeds $500 million. There can be no assurance that any payments will be made with respect to the CVRs.

The transaction is expected to be completed in the first quarter of 2023. The transaction is subject to the tender of a majority of the outstanding shares of Concert's common stock, as well as the receipt of applicable regulatory approvals and other customary closing conditions. Following the successful closing of the tender offer, Sun Pharma will acquire all remaining shares of Concert that are not tendered into the tender offer and all shares of Concert's preferred stock through a second-step merger at the same price of $8.00 per share of common stock, plus one non-tradeable CVR. The merger will be effected as soon as practicable after the closing of the tender offer.

For the nine-month period ending September 2022, Concert reported total revenue of $29 thousand and a net loss of $90.6 million. The R&D expense for that nine-month period was $75.7 million. As of September 30, 2022, Concert had approximately $148.9 million in cash, cash equivalents and investments.

Sun Pharma had net cash of $1.6 billion as of September 30, 2022.

**Advisors**

Moelis & Company LLC is serving as financial advisor to Sun Pharma, and Davis Polk & Wardwell LLP is serving as legal advisor. MTS Health Partners, L.P. and Chestnut Partners, Inc. are serving as financial advisors to Concert, and Goodwin Procter LLP is serving as legal advisor. In addition, MTS Securities, LLC (an affiliate of MTS Health Partners, L.P.) provided an opinion to the Board of Directors of Concert regarding the fairness of the offer consideration to be received by the holders of Concert common stock in the transaction, subject to the qualifications and limitations set forth therein.

* * *

22. It is therefore imperative that Concert's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.   The Materially Incomplete and Misleading Solicitation Statement**

23. On January 23, 2023, Concert filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Solicitation Statement fails to provide material information concerning financial projections by Concert management and relied upon by MTS in its analysis. The

Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts, which included Base Case Forecasts, Upside Case Forecasts, Downside Case Forecasts, Risk-Adjusted Base Case Forecasts, and Risk-Adjusted Downside Case Forecasts (the "Company Projections") and provided them to the Board and MTS with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Concert management provided to the Board and MTS. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: Unlevered Free Cash Flows for the fourth quarter of fiscal year 2022 through the second quarter of fiscal year 2026 but fails to provide line items used to calculate the metric and a reconciliation of the non-GAAP metric to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

26. The Solicitation Statement also fails to disclose the specific risk adjustments made by Concert management.

27. When a company discloses non-GAAP financial measure in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their

9

corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning MTS's Financial Analysis*

30. With respect to MTS's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 14.0%

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

10

to 16.0%; (ii) the Company's weighted average cost of capital; (iii) tax savings from usage of federal net operating losses and future losses as set forth in the Company Projections (iv) the estimated total number of fully diluted outstanding shares of Concert as of January 6, 2023; and (v) the expected dilution, if any, associated with the Capital Raise.

31. With respect to MTS's *Public Trading Comparable Companies Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each company selected by MTS for the analysis, including the closing price per share of common stock of each selected company, each selected company's fully diluted outstanding shares, each selected company's total cash and cash equivalents, and each selected company's book value of debt; and (ii) the basis for selecting the reference range of enterprise values.

32. With respect to MTS's *Precedent Transactions Analysis*, the Solicitation Statement fails to disclose: (i) the consideration paid in each transaction selected by MTS for the analysis; and (ii) the basis for selecting the reference range of enterprise values.

33. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for**
**Violations of Section 14(e) of the Exchange Act**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

36. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

38. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

39. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their

shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

40. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

41. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

42. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

43. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

44. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

45. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

46. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

47. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Concert within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Concert, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Concert, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior

to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Concert, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

52. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 3, 2023                    **MELWANI & CHAN LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Floor
New York, New York 10036

Tel: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*